No. 907.

### KENNEDY v. GRAHAM, ADMINISTRATOR.

DECEDENT'S ESTATE.—*Claim.*—*Promissory Note.*—*Execution.*—*Burden of Proof.*—Where a promissory note is filed as a claim against a decedent's estate and is transferred to the issue docket, the general denial interposed by the law negatives the execution of the note, and the burden of establishing its execution rests upon the claimant·.

PROMISSORY NOTE.—*Execution, Manner of.*—*Signature.*—*Instruction to Jury.*—If the court instruct the jury, in an action on a promissory note, that the note could only be executed by the maker signing it, or by touching the pen in the hand of the person signing his name for him, such instruction is erroneous.

Opinion on petition for rehearing by Ross, J.

DAVIS, C. J., and GAVIN, J., concur in the result.

From the Montgomery Circuit Court.

*J. Wright* and *J. M. Seller*, for appellant.

*A. D. Thomas* and *W. T. Whittington*, for appellee.

Ross, J.—The appellant filed a claim against the estate of William Hicks, deceased, of which estate the appellee was acting as administrator. The claim was not allowed, and was transferred to the issue docket for trial.

There was a trial by a jury, and a verdict returned in favor of the estate, upon which verdict the court rendered judgment.

There is but one error assigned in this court, namely: "The court erred in overruling the motion for a new trial."

In order that the appellant might recover in this action, it was necessary for him to prove the execution of the note sued on. *Barnett's Admx.* v. *Cabinet Makers' Union*, 28 Ind. 254; *Cawood's Admr.* v. *Lee*, 32 Ind. 44.

Under section 391, Elliott's Supp. 1889, it was unnecessary for the appellee, as administrator, to plead any matter by way of answer, except set-off or counterclaim.

The law puts in the general denial for the administrator or executor of an estate, and, under the general denial thus put in, the execution of the note is put in issue, and the burden of establishing its execution rested upon the appellant.

There was ample evidence to prove the execution of the note, but the court, in its instructions to the jury, instructed them that there was a conflict in the evidence upon this question, and whether or not there is a conflict in the evidence, is the first question to be considered.

The appellant, although sworn as a witness, was not permitted to testify. Other witnesses, however, swore that the decedent told them, on the day the note purports to have been executed, that he did give the appellant his note for five hundred dollars, in settlement of differences then existing between them. This evidence was uncontradicted in any way, except it shall be considered that the following evidence is contradictory thereof, viz: The witness, Newton Shepherd, called on behalf of the estate, testified that on the day of the decedent's funeral, appellant, in conversation with witness, asked witness if he thought an administrator would be appointed to settle the estate, and witness said he thought not, because the decedent did not owe anything, and to this appellant replied: ''No; he does not owe anything.''

Witness further testified that shortly afterwards, and during the same conversation, appellant said he held an account against the decedent for work done for him by appellant after appellant arrived at the age of twenty-one. ''He also stated that on two or three occasions Mr. Hicks had started to town with the conclusion of making a will or something for him that was objected to by Thomas Hicks and Sarah Hicks, his sister, and he had

let the matter run as far as he could; that it was an open account without any settlement; finally he got Mr. Hicks, he claimed, to fix it up.    He said Mr. Fullenwider did the writing.''

Other witnesses testified to different conversations had with appellant after Mr. Hicks' death, wherein he told them Mr. Hicks had given him (appellant) his note, but, to one, had stated the note was executed at Ristine's office; to another, that it was executed at Kennedy's office; and, to another, that it was executed at appellant's own house.

All this testimony as to what appellant said with reference to where the note was executed, neither tended to establish the fact that the decedent did not execute the note, nor did it contradict the testimony of the other witnesses who testified to the admissions of the decedent.    It was immaterial where the note was executed, so long as it was in fact executed.    That he did execute the note some place is undisputed.

The court, in its instructions to the jury, instructed them that in executing a note the party need not sign his name, but might make his mark by touching the pen in the hand of the person signing his name for him.

Several times during the giving of the instructions, counsel for the appellant asked the court to instruct the jury fully as to what was meant by the execution of a note, and the court repeated to the jury that it was necessary for the person executing the note to have touched the pen in the hands of the party signing for him.

The note in controversy was signed by mark, and there was no evidence that the decedent touched the pen in the hand of the person who signed his name for him. It is not necessary, in the execution of a note, that the person executing it, if unable to write his own name, shall touch the pen while such person is signing for

him, it is only necessary that such person be author-
ized by him to sign his name for him.

From the repeated instructions given by the court, that
the decedent could execute the note only by signing it
himself, or by touching the pen in the hand of the per-
son signing his name for him, it is clear that the jury
were impressed that in no other way could the decedent
have executed the note.

Viewing the evidence as we do, and the uncertainty
in the instructions given, we think a new trial should
have been granted.

We fully agree with counsel that when a cause has
been fairly tried, and a just result reached, the court is
loth to reverse for slight errors. And, we may add that
it often appears from the evidence that the verdict or
finding is contrary to the weight of the evidence, but the
rule of this court is that it will not weigh the conflicting
evidence, and decide upon which side there is a pre-
ponderance. When the evidence tends to establish a
fact, and is undisputed, if the court, by its finding, or
the jury, by their verdict, decide contrary to such evi-
dence, it is the duty of this court, on appeal, to set aside
the judgment and grant a new trial.

Judgment reversed, with instructions to sustain appel-
lant's motion for a new trial.

DAVIS, C. J., and GAVIN, J., concur in result on ac-
count of giving erroneous instructions, but do not agree
with all the reasoning in relation to the evidence.

Filed Dec. 19, 1893.

## ON PETITION FOR A REHEARING.

Ross, J.—The appellee asks for a rehearing, or, at
least, for a modification of the original opinion, insist-
ing that the court erred in stating that the record shows

that there was no conflict in the evidence upon the question of the execution of the note sued on.

While the writer is satisfied with the original opinion in this respect, a majority of the court think there was such a conflict in the evidence on this question as warranted the court in instructing the jury that such conflict existed. To this extent the original opinion is modified, and the petition overruled.

Filed April 4, 1894.