### BOWEN, ADMINISTRATRIX, *v.* O'HAIR, GUARDIAN.

[No. 3,625.    Filed June 26, 1902.]

EXECUTORS AND ADMINISTRATORS.—*Bills and Notes.—Proof of Execution.*—The burden is upon the plaintiff in an action against a decedent's estate on a promissory note to prove the execution of the note; since under the statute it is not necessary for the administrator to plead any matter by way of answer except set-off or counterclaim. *p. 467.*

SAME.—*Bills and Notes.—Principal and Surety.—Execution of Note.— Evidence.*—In an action to enforce the payment of a note against a decedent's estate, the plaintiff, over the objection of the administrator, proved by the principal, who was a party defendant, that he, at decedent's request, signed decedent's name to the note as surety. *Held,* that the witness being a necessary party, and his interest adverse to the estate, he was incompetent, under §506 Burns 1901. *pp. 467–470.*

From Hendricks Circuit Court; *T. J. Cofer,* Judge.

Action by Robert L. O'Hair, guardian, against Georgiana Bowen, administratrix of the estate of Andrew J. Bowen, deceased, on a promissory note. From a judgment for plaintiff, defendant appeals. *Reversed.*

*F. W. Cady* and *R. T. Hollowell,* for appellant.
*E. G. Hogate, J. L. Clark* and *S. A. Hays,* for appellee.

ROBY, J.—This action is founded upon a promissory note, dated March 1, 1888, due one day after date, for $600, payable to Joseph Harrah, and purporting to be

signed by Joseph B. Bowen and A. J. Bowen, the last named being appellant's decedent. The payee filed his claim against the estate of said Andrew J. Bowen on October 29, 1896. The appellee, acting for him, subsequently filed an amended complaint making Joseph B. Bowen a defendant. The amended complaint, in addition to the usual averments, contained the following statement: "That said Joseph B. Bowen is principal, and A. J. Bowen surety upon said note."

Joseph B. Bowen filed answers of general denial and payment, but was not represented by attorney, and did not join in the defense, which was made by the appellant, administratrix, without formal answer, in accordance with the provisions of the statute, that it shall not be necessary for an administrator to plead any matter by way of answer except a set-off or counterclaim. §2479 Burns 1901, §2324 Horner 1901. To make a case entitling him to recover, it therefore devolved upon appellee to prove the execution of the note sued upon. *Kennedy* v. *Graham,* 9 Ind. App. 624.

The note was introduced in evidence, over the objection and exception of the appellant. No proof of its execution was made or offered, except as the same was made by the testimony of Joseph B. Bowen. The testimony of this witness was admitted over objection and exception. The point made is that he was incompetent to testify under the provisions of §506 Burns 1901. His competency so to testify must determine the result of this appeal. The word "defendant" was used in making the objection, and saving the exception. There were two defendants, and the point is made that the record does not show which defendant was referred to. The context very clearly shows that the defendant designated was the appellant here, she alone making a defense. The attorney through whom the objection was made had authority to act for her only, and is presumed to have so acted. This witness was a necessary

party to the record and to the issue. §2479 Burns 1901; *Owings* v. *Jones,* 151 Ind. 30, 34.

"In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered, for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate." §506 Burns 1901. The competency of the witness depended upon whether his interest was adverse to the estate. He testified that the decedent orally authorized him to sign his name as surety; that the conversation took place in February, 1888, at witness' own house; that he had before that time seen Mr. Harrah and made arrangements for the loan; that Harrah had the money on hand; that the witness had blank notes in his house, one of which was afterwards used; that about two weeks later he got the $600 from Mr. Harrah, and in his presence signed the note in suit with his own name and that of the decedent.

"The true spirit of the statute seems to be that when a party to a subject-matter or contract, in action, is dead, and his rights in the thing or contract have passed to another who represents him in the action or proceeding which involves such contract or subject-matter, to which the decedent was a party, the surviving party to that subject shall not testify to matters occurring during the lifetime of the decedent." *Taylor* v. *Duesterberg,* 109 Ind. 165.

In determining the competency of a witness the accepted rule is not to regard the mere letter of the statute, but to look to its spirit and purpose. *Sloan* v. *Sloan,* 21 Ind. App. 315; *Clift* v. *Shockley,* 77 Ind. 297; *Durham* v. *Shannon,* 116 Ind. 403, 9 Am. St. 860. Two facts must exist to render a party incompetent under §506 Burns 1901,—he must be a necessary party to the issue or record,

and his interest must be adverse to the estate. *Walker* v. *Steele,* 121 Ind. 436, 439; *Reddick* v. *Keesling,* 129 Ind. 128; *Nelson* v. *Masterton,* 2 Ind. App. 525.

At common law interested parties were disqualified from testifying. Starkie on Ev. (10th Am. ed.), 22; 3 Greenleaf on Ev., §386. The kind of interest necessary to exclude such testimony was limited to a legal interest in the event contradistinguished from affection, prejudice, or bias. 3 Phillips on Ev. (4th Am. ed.), 13; Starkie on Ev., 23; Greenleaf on Ev., §389. Such legal interest consisted: (1) In a direct or certain interest in the event of a cause; (2) in an interest in the record for the purpose of evidence, however minute that interest may have been. Starkie on Ev., 24; 3 Phillips on Ev., 59. "He was not a competent witness, * * * where the issue involved any breach of duty, or default, in respect of which the witness would be liable over to the party calling him. Such a witness for whichever party called, was obviously interested in protecting himself against the consequences of failure, by procuring a verdict to pass for the party who called him. Although guilty of misconduct, the record would conclusively show that the party calling him had received no prejudice, so far as that cause was concerned. * * * A witness was also incompetent where the record would, if his party succeeded, be evidence of some matter of fact to entitle him to a legal advantage, or repel a legal liability." Starkie on Ev., 121, 122.

The statute 3 and 4 Wm. IV, chap. 42, removed the interest in the record by making the record inadmissible as evidence in a subsequent suit. This seems to have been the first step in the reform, which has resulted, in this State, in the removal of the disability of the witnesses to testify because of interest, except in certain cases, one of which is specified in §506 Burns 1901. The witness was interested, using the word in its general and not in its technical sense, against the estate. The defense made by the administra-

trix was dependent upon the lack of authority in the witness to sign decedent's name to the note in suit. Whether such authority did or did not exist became the sole issue between the parties. To testify in favor of the administrator meant for the witness a confession of forgery and of obtaining money by false pretenses. One party to the transaction was dead, and no stronger motive impelling the other to testify against the estate can be stated than did in fact exist; at the same time, unless the witness had an adverse interest within the legal meaning of the term, such motive could only be construed as bearing upon his credibility. The facts show a legal interest within the second definition quoted from Starkie. If the signature of the decedent was forged by the witness, a judgment in this action would fully protect him from the consequences of his wrongful act, since the holder of the note could do no more than recover judgment upon the note if it was genuine. The record of a judgment in this action in favor of the appellee and against the estate would conclusively show that the appellee had suffered no damage on account of the witness' wrongful action in signing decedent's name, without authority, if he did so sign it.

Had a judgment been rendered in favor of the administrator it would have established the fact that the note, upon the faith of which the witness had procured $600 in money, was not what it purported to be. A judgment in tort is more drastic and more easily collected than a judgment upon contract. If the signature of decedent was forged and by means thereof the money of appellant's ward wrongfully procured by the witness, he became liable to a judgment in tort. The witness had an interest in the record in this case, for the reason that it would be competent evidence to protect him from liability in such subsequent action. Considering the word "interest" as used in §506 Burns 1901, by reference to the common law definition, it follows that the witness was not competent. Such result coincides with

the spirit of the act as many times stated and applied by the courts in this State.

Judgment reversed, and cause remanded with instruction to sustain the motion for a new trial and for further proceedings not inconsistent herewith.